Good morning, Your Honor. Good morning, everyone. May it please the court and counsel. Your Honor, I am, excuse me, Your Honors, I am Brian Whitaker. I represent Bud Ray Brown. Mr. Brown became my client in 2015 on an unrelated homicide case in Spokane County. When I first met him, we learned that we were both from Florida. We'd both moved to Wenatchee for a period of time. He had been represented by others in a law firm where I worked in Wenatchee. And he had an affection for Bruce Lee, and I had a karate studio. So I worked quite diligently to establish a rapport with him. And in August of 2015, I was surprised to learn that he'd been moved to the isolation floor of the Spokane County Jail. And when I asked him why, he said something to the effect that he had been in a cell that had been dismantled, and it appeared someone had been trying to escape. So because he was also in jail in Florida on an armed career criminal sentence and was involved in the Johnson re-sentencing, he had a plan for how we were going to handle his murder case. And it, at one point, involved getting in touch with the United States Attorney's Office to make sure that if he did substantial time on the state murder case, that they would stay out of the way and not charge him with an escape. And I contacted the office, and the office, Mr. Ahmed said, we don't really have any interest in that because the other person that was in the cell that night was being held in Spokane County on federal charges for conspiracy to commit murder. And it was the government's intention to use this escape attempt against Mr. Hendrickson so that he had a guilty conscience. As the government moved forward seeking the guilty conscience information, unbeknownst to me, my client writes a letter and gives it to Hendrickson, and it gets to Hendrickson's counsel. And it is filed with a memo by counsel saying you can't use that against Hendrickson because Mr. Brown has taken complete responsibility for the escape. Well, the government did not get that information. They were not able to use the escape attempt against Hendrickson. And almost immediately thereafter, I get an email from the government saying, Brian, there are no more agreements, and we are going after Brown. And it comes from Ani. Mr. Ahmed sends me the email. And sure enough, they file the indictment. So let's stop right there. What case are you relying on to say that charges in this instance, not an escalation of charges but just an initial charge, would be vindictive? It's not a case per se because I understand the filing of the charges in and of itself is not a vindictive process. The prosecutor can't be found to be vindictive simply by adding charges to a case or now I've decided that I would do this. But in this case, this is a case that is known specifically to the government. They have a particular avenue that they're going to take. And when that avenue falls apart, they now take what I refer to as a personal and vested interest in. We are now going to punish Mr. Brown specifically in retaliation for this act. Right. No, I appreciate where you're coming from. I mean, the Supreme Court has said we have to give prosecutors a lot of deference in charging decisions. And here, I don't believe they had the letter attached to this court filing when you had that conversation with them initially, did they? That's correct. I mean, I feel bad you kind of got bushwhacked by another defense attorney who – this is a little bit outside the case. A client bushwhacked me. But you were representing the client at the time. That's correct. And was that known to this other lawyer? Yes, it was. I mean, under – at least under California rules, they were required to go to you before they were to get such a declaration. Well, they didn't get it. My client mailed it to them, and my client provided it. So he did not seek my advice or counsel. He wrote the letter. He didn't tell me about the letter. But did they contact him to get the letter? No. He just did it? It was souspente. It was – he went out of his way to do this. So, yes. Why did he do it? Counsel, why did he write that letter and vindicate Henriksen if he wasn't the one? Your Honor, my client actually refused to tell me that. Well, please don't – No, he did. No, no, but don't – please don't go on any client confidences. I just want to be very careful. Right. It's kind of a rhetorical question that I'm asking. I'm not asking you for your privileged discussions. I appreciate that. You know, I think it – my client has some – he's a very focused individual. I think it would be fair to characterize him as institutionalized to some extent, and perhaps he thought there would be some long-term benefit to himself. Counsel, why doesn't the submission of that declaration to the court change everything? I mean, now the government has in its possession basically an admission to the crime, thereby justifying a completely different view of the desirability of prosecuting him. I don't know how you – if you're – are you suggesting that the sequence you describe is either direct evidence of a vindictive motive or the circumstances you describe would justify a presumption of vindictiveness, which the government now has to overcome? What are you trying to suggest with that sequence that you outlined? Your Honor, I think the latter, the sequence, shows that there was a – there was – this is not an investigation that lands on a desk and then charges are filed. This is someone that – these events are brought to their attention as a prosecutor, and they make famously the effect that I'm not going to move forward. And then when he's stymied in how he wants to use the information, the information is then specifically used against my client. That is not an objective prosecutorial flow. That is not someone who is involved in a case and says, you know, I have you on 15 counts of uttering counterfeit obligations and I'm going to charge you with one, but when you decide to go to trial, I have to charge the other 14, because those facts all exist at the time of the charging. This, from my perspective, is that the charging decision was made, that we are not going to move forward. Things changed, impeded the government's position in a different case, and then in retaliation the new charge – these charges were filed. So I think under these specific circumstances that that action could be characterized as vindictive. Do you want to reserve your time? I do not, Your Honor. I have nothing more to add. Thank you all very much. Well, you have two minutes in case you change your mind. I have nothing to add. Sometimes lawyers change their mind, as we learned in this case. All right. I appreciate that. Thank you. Good morning, Your Honors. Russ Smoot for the United States. In response, really, to the Court's colloquy with counsel, the United States' position is clearly that the timing in this and the timing of the defendant's letter that basically confessed to the crime of escape completely distinguishes this case from the Jenkins case in which the Court did find prosecutorial vindictive prosecution. The bottom line is that at the time of the escape, which was – or the attempted escape, I should say, and that's very important because obviously if it was an actual escape, the case would be much better, obviously because the defendant would be outside of the facility. I think it's still pretty good. Right. It is pretty good, but it wasn't good at the time of August 20th, I believe, 2014. True. Before the letter. The biggest problem in that case, as I think the Court would appreciate, is you have two people, one cell, one bed sheet, and both people are denying what had occurred. Since that time, and as the Court found, that unlike the other cases, this is a case in which new evidence came to light that really made the case. Unlike the Jenkins case in which it involved a woman that had confessed to smuggling aliens at the time of her arrest, where the Court said that the United States had all of that information at its hands at the time of the initial charges, the United States did not have, I would say, did not have enough for a prosecutable case at the time of the escape. In terms of any conversations that had been made with counsel, I was not counsel at the time, but my complete review of the record would suggest to me that none of the e-mails or the conversations were presented in any way to the district court. I think that's important because when this case was presented to the district court under the vindictive prosecution issue, that the court specifically found that the defendant had not proven any direct vindictive prosecution, any evidence of that, nor had the defendant presented any evidence that rose to the presumption of potential vindictive prosecution for the United States to rebut. So the bottom line in this case is that if this is decided on the merits of the case, then this case is completely distinguishable from Jenkins in the very matter of the fact that the evidence necessary to actually pursue the case did not come until the defendant had admitted that he was solely responsible for the attempted escape. Counsel, will you refresh my memory, please? Was Hendrickson actually charged with the escape? I don't believe so, Your Honor. At the time, Hendrickson was facing murder for hire, federal murder, interstate murder for hire charges. Ultimately, his trial began in late January of 2014, I think, or 2015, I believe. Actually, no, I take that back. It was 2016. But ultimately, he was convicted, received six life sentences. So I think that at that point, any decision to follow up with attempted murder was a mistake. My question is more about, I'm still trying to understand why Brown wrote the letter if Hendrickson wasn't facing charges for this attempted escape. Well, from my understanding of the case and review of the record, of course I can't say why he would necessarily write the letter. What would motivate him to do it? Why would he need to exonerate Hendrickson if Hendrickson wasn't actually charged with it? Well, Hendrickson being charged with the murder, the United States sought to use the attempted escape as flight evidence and filed a motion in Limine to attempt to use that in trial. And ultimately, in response, I think, to that motion in Limine in the Hendrickson case, defense counsel for Hendrickson then attached this letter that Mr. Brown had written. Why Mr. Brown felt motivated to do that letter, that's not in the record. Counsel, I mean, Mr. Brown's initiative did frustrate the government in its attempt to use this escape evidence of consciousness of guilt. Isn't that true? The United States did not prevail. That motion in Limine was denied. I assume that the government was not very happy about that. Well, I can't answer for trial counsel. From my own perspective, I would have been surprised if it would have been granted under those circumstances. I mean, I'm going off now kind of in a hypothetical, but unlike running away from law enforcement at the time of an arrest, I think that a good argument could be made that trying to escape from custody may just mean that the person doesn't want to be in custody and may not have the same level of guilt of running away. So quite frankly, I would have been surprised if it would have been granted, but I think it was a legitimate motion to pursue. I'm sure that any time pretrial in the United States is limited in its evidence that it wants to present, I think it's fair to say it's not happy with limitations, but I don't know that it really ultimately frustrated the case. At least it didn't by the outcome. There was another issue. It wasn't raised. I think that the briefing really hits the federal custody issue. I think there's an on-point Ninth Circuit case law. Unless the court has further questions, I'll take my leave. Okay, thank you very much. Thank you. Counsel, you have two minutes if you'd like to say anything else. No, thank you very much, Your Honor. Very well. And this case is submitted. Thank you both for your argument.
judges: Lipez, Wardlaw, Owens